ACCEPTED
12-14-00007-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
3/30/2015 4:46:38 PM
CATHY LUSK
CLERK

# No. 12-14-00007-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
3/30/2015 4:46:38 PM
CATHY S. LUSK
Clerk

## In the Court of Appeals
### for the
## Twelfth District of Texas
## Tyler, Texas

---

**REX SMITH**

*Appellant*

**v.**

**KELLY DAVIS AND AMBER DAVIS**

*Appellees*

---

*Appealed from the 294th Judicial District Court*
*Van Zandt County, Texas*

---

## APPELLANT'S RESPONSE TO MOTION FOR REHEARING

---

Greg Smith
Texas Bar No. 18600600
RAMEY & FLOCK, P.C.
100 E. Ferguson, Suite 500
Tyler, Texas 75702
Telephone: 903-597-3301
Facsimile: 903-597-2413
gregs@rameyflock.com

Jeffrey C. Irion
Texas Bar No. 10413500
240 S. Old Gun Barrel Lane
P. O. Box 5027
Gun Barrel City, Texas 75147
Telephone: 903-887-4050
Facsimile: 866-422-8403
jirionattorney@aol.com

**ATTORNEYS FOR APPELLANT**

**Response to Rehearing Motion**

This Court has requested answers to two questions, concerning (1) the proper amount to be recovered in rescission and (2) the availability of attorney's fees. The short answers are, first, the Court's judgment awards too much, not too little, in rescission and, second, there is as a matter of law no basis for an attorney's fee recovery to the Davises.

## I.    The Court's decision *over*compensates the Davises.

Respectfully, the Court's rescission award affords the Davises a windfall. The Court has awarded rescission under Property Code Section 5.072. The only contract being rescinded (which the Davises embrace as the source of their recovery) is the contract for sale of *lot 7*—PX-3—the parties' *second* contract. The consideration for this sale, as explicitly stated in PX-3, consists solely of (1) a $3700 down payment and (2) a series of monthly payments to be made at the rate of $561.66, under and subsequent to the contract's execution. PX-3, attached. This contract does not credit the Davises with prior interest payments made under the contract for lot 9. Nor should it, because as the parties expressly agreed, in PX-3, the Davises' value or equity in lot 9 is fully embodied in the $3700 in principal payments, all $3700 of which was credited under PX-3 towards the purchase of lot 9.

When the parties agreed to a deal on lot 7, Smith agreed to accept the return of lot 9 and to count the Davises accrued equity in that lot—the $3700—as a down payment on lot 7. *See* Slip Op. at 12. Thus, the record, viewed most charitably towards the Davises, shows the total monthly payments *under PX-3* to be $15,820 ($565 per payment, times 28 total payments, slip op. at 12). These two amounts—the $3700 down payment plus the $15,820 in *subsequent* monthly payments—make up the total consideration paid under PX-3, as established by that contract's clear terms. PX-3 (declaring a purchase price of $65,100 for lot 7, consisting solely of (1) the $3700 down payment and (2) a series of prospective payments, the first of which was due April 22, 2005). The maximum sustainable rescission award consistent with PX-3—the award that fully restores all consideration ever paid under that contract—is likewise an award of $19,520, comprising (1) the $3700 down payment and (2) the $15,820 in monthly payments *under PX-3*. *See* Slip Op. at 5 ("Here, the Davises presented a written contract executed by Rex.") The Property Code neither requires nor permits anything more.

The Court's current decision, awarding the Davises $28,620 (including all payments made under the prior, valid contract for lot 9) violates Section 5.072, which, as this Court notes, declares that "[t]he rights and obligations of the parties to [an executory] contract are determined solely from the written

2

contract." Slip Op. at 5, quoting Prop. Code §5.072. Payments made under the prior contract (the contract for lot 9) are simply not at issue because the statute calls only for a refund of payments made to the seller *under the contract that violates the statute.* This is the necessary implication of Section 5.072. It is stated expressly in a related statutory subsection. *See, e.g.,* TEX. PROP. CODE ANN. §5.085 (stating that a violation "entitles the purchaser to cancel and rescind the executory contract and receive from the seller . . . the return of all payments of any kind made to the seller *under the contract*"); *see also Morton v. Nguyen,* 412 S.W.3d 506, 510 (Tex. 2013)(if the seller fails to comply with the Subchapter D disclosure requirements, then buyer may "'cancel and rescind' the contract for deed and receive from the seller 'all payments of any kind made to the seller under the contract'").

Thus, to avoid a windfall, the Court's current judgment award should be reduced by $9,100. (And even this overcompensates the Davises, because it ignores the rental value accruing during the period while the property was under the Davises' control, available for their use and enjoyment.)

## II. The Property Code's Section 5.072 does not support recovery of attorneys' fees.

This Court was correct to deny a fee recovery because it lacks the necessary statutory basis. As the Court's opinion already states, the Property

3

Code's Section 5.072, the basis of the Davises' current recovery, does not provide for any award of attorneys' fees. Slip Op. at 13. As for the analysis on this issue, we really cannot improve on the Court's opinion.

In Texas, attorneys' fees are recoverable only where a statute or contract authorizes it. *Tony Gullo Motors I v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). In fact, "[t]his rule is so venerable and ubiquitous in American courts it is known as "the American rule." *Id.* The Davises' contract with Rex Smith does not mention recovery of attorneys' fees. PX-3. And as this Court's opinion already correctly notes, nor does Property Code Section 5.072. Slip Op. at 13. The Texas Supreme Court's decision in *Morton v. Nguyen* explicitly recognizes this. *See* 412 S.W.3d at 512 ("Because no remaining cause of action supports an award of attorney's fees, the court of appeals should have also reversed the award of attorney's fees predicated on the section 5.077 claim and the Finance Code claims."). But this Court already knew that. Slip Op. at 13.

Of course, the Legislature knew how to authorize recovery of attorneys' fees when it desired to do so. It expressly included attorneys' fees among the available remedies for violations of other statutory provisions within the same Property Code subchapter—such as Section 5.077. *See* Slip Op. at 13 ("A purchaser recovering liquidated damages under Section 5.077 is entitled to

4

reasonable attorney's fees"). The Davises have not recovered under Section 5.077, but under a proviso, Section 5.072, that does not support a fee recovery.

## III.   Nor can the Davises recover attorneys' fees under the DTPA.

The Davises seek to bootstrap the DTPA's authorization of attorneys' fees. But that desperate position has two intractable defects. First, as this Court's opinion already correctly states, the Davises have not recovered under the DTPA. Slip Op. at 14 ("as in *Morton*, the Davises did not recover under the DTPA"). The trial court's initial judgment awarded a recovery for statutory fraud. 2 CR 339. That judgment was reversed. The trial court's second judgment then awarded a now-reversed recovery under Property Code Section 5.077 and alternatively awarded recovery under other Property Code sections, including Section 5.072. 2 CR 444-45. But it did not award a recovery under the DTPA. *Id.* The Davises accepted this judgment. In fact, it was apparently drafted by their counsel. The DTPA is immaterial.[1]

The Court's opinion likewise notes a second reason why the DTPA is no source of a fee recovery: the Davises have not proved, let alone recovered, any

---

[1]For the same reasons, it is immaterial that Section 5.072 includes a provision stating that a failure of the parties' executory contract to include the statutory disclaimer of oral agreements is a false, misleading, or deceptive act. As this Court's request for a response observes, the question is only whether Section 5.072 provides for attorneys' fees, not whether the DTPA would do so.

5

actual damages; nor have they proved reliance. Without both showings—proof

of reliance and proof of resulting DTPA actual damages—the Davises cannot

qualify as DTPA "prevailing parties." The supreme court recently made this

point definitively, in *Cruz v. Andrews Restoration*, where the court explained:

> The jury awarded Cruz no damages on his DTPA claim. He cannot, therefore, satisfy section 17.50(a)(1). The trial court found that Cruz had suffered "injury or harm" but left it to the jury to quantify that amount. *We have held that a party who failed to recover actual damages or damages for mental anguish was not entitled to attorney's fees under the DTPA. See Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 567 (Tex. 2002). *We see no reason to treat Cruz's restoration claim differently. Even a rescission award requires a showing of actual damages. See Russell v. Indus. Transp. Co.*, 113 Tex. 441, 258 S.W. 462, 465 (1924)(holding that "some pecuniary injury is essential to an action to rescind a contract for fraud"). *** The statute's clear language provides a cause of action only to consumers who have sustained damages, and the jury awarded Cruz none. *Moreover, under 17.50(a)(1), a consumer loses without proof that he relied to his detriment on the deceptive act. *** Reliance is a necessary element of Cruz's DTPA claim, and he failed to secure a finding on that contested issue. *** Because the statute authorizes recovery only to a consumer who has sustained "actual damages" or "damages for mental anguish" and who relied to his detriment on the deceptive act, Cruz has not shown that he is a prevailing consumer entitled to section 17.50(b)'s remedies.* 364 S.W.3d 817, 823-24 (Tex. 2012).

Exactly. As the quoted language from *Cruz* establishes, the Davises would have

no basis for recovering anything under the DTPA—not even equitable

rescission—without first proving both (1) reliance and (2) actual damages

accruing because of the alleged DTPA violation (*i.e.*, because of the technical failure to include the Property Code's notice).

Here, there is absolutely no evidence that the failure to provide the Section 5.072 notice[2] was the producing cause of actual damages or induced any reliance on the Davises' part. There was no attempt to submit DTPA reliance or attempt to submit DTPA actual damages. And there was no such damage or reliance. Rather, the violation was a mere innocent omission of a notice that the agreement was not subject to oral modification.

The Davises' argument that the jury's answer to Question 18 establishes DTPA actual damages is clearly wrong. Question 18 was conditioned upon a yes answer to Question 2, which solely submitted liability for the different—and now reversed—matter of statutory fraud. *See* 2 CR 323 ("If you answered Question 2 "Yes," then answer the following question. Otherwise, do not answer the following question.") The alleged statutory fraud concerned Rex Smith's representation that he was authorized to sell the property, which was community property. It had nothing to do with notice under Section 5.072.

---

[2]Section 5.072 requires a printed notice stating: "THIS EXECUTORY CONTRACT REPRESENTS THE FINAL AGREEMENT BETWEEN THE SELLER AND PURCHASER AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES." TEX. PROP. CODE ANN. §5.072. There is no evidence that the parties' conduct or their agreement would have differed if this language had been included within the contract.

For this reason, the jury's answer to Question 18 is immaterial, and cannot support the Davises' current recovery.

Nor can DTPA actual damages or reliance be deemed in the Davises' favor. Deemed findings are available only when factually-sufficient evidence sustains them. TEX. R. CIV. P. 279. Here, there is no evidence the Davises relied upon, or otherwise sustained any actual damage stemming from, the technical violation of Section 5.072. What is more, deemed findings arise only in support of the trial court's actual judgment. TEX. R. CIV. P. 279 (". . . such omitted element or elements shall be deemed found by the court in such manner as to support the judgment"). Here, that judgment—which, again, the Davises did not challenge—has not ordered a DTPA recovery. So there is nothing for any DTPA deemed finding to support.

Even if 5.072 were to authorize statutory rescission absent a finding of actual damage for the statutory violation—which is a highly suspect assumption, given the supreme court's clear rationale for reversing DTPA rescission in *Cruz*—the Davises still have no basis for recovering their attorney's fees or anything else beyond the $19,520 they actually paid to Smith pursuant to PX-3.

8

## Conclusion and Prayer

By awarding recovery of amounts paid under a valid contract for another lot, the Court's current decision awards a clear windfall of $9,100. The decision correctly denies the Davises any attorney's fee recovery.

The Davises' rehearing motion should be denied. And the current decision should be modified to either (1) strike the rescission award in its entirety (based on the absence of actual damages resulting from the Section 5.072 violation, per the reasoning in *Cruz*), or (2) award rescission of at most $19,520. Otherwise, the Court's current decision should be affirmed.

Respectfully submitted,

Jeffrey C. Irion
Texas Bar No. 10413500
240 S. Old Gun Barrel Lane
P. O. Box 5027
Gun Barrel City, Texas 75147
Telephone: 903-887-4050
Facsimile: 866-422-8403
jirionattorney@aol.com

/s/ Greg Smith
Greg Smith
State Bar No. 18600600

RAMEY & FLOCK, P.C.
100 East Ferguson, Suite 500
Tyler, TX 75702
Telephone: (903) 597-3301
Facsimile: (903) 597-2413
gregs@rameyflock.com

**COUNSEL FOR APPELLANT,**
**REX SMITH**

## Certificate of Service

The undersigned certifies that a copy of the above and foregoing document was served in accordance with the applicable Texas Rules of Civil Procedure on this the 30th day of March, 2015, on the following:

**Via email**
S. Gary Werley, Attorney
1840 Acton Highway
Granbury, Texas 76049
sgwerley@werleylaw.com

/s/ Greg Smith
Greg Smith

P.O. Box 536
Eustace, TX 75124
Phone No. 903/425-7101

DATE: 3-22-05

For and in consideration of the provisions hereof and of the down payment, as shown below by

NAME: Kelly G. & Amber M. Davis

ADDRESS: 815 Natus St. Cedar Hill, TX 75014

COUNTY Dallas TELEPHONE: _____

(which address, or other address furnished Seller by Purchaser in writing, shall be Purchaser's correct mailing address for all purposes), herein called Purchaser, to Rex Smith , herein called Seller, Seller hereby reserves and agrees to sell to Purchaser the following described land: _____ in Tall Oaks Estates Subdivision, Van Zandt County, Texas, as shown Tract No.(s)_____ by the most recently heretofore recorded plat covering such Tract(s) recorded in the map or plat records of Van Zandt County, Texas.

The sales price, down payment, finance charge and total of payments are as set forth below, and purchaser agrees to make payments in the manner and amount shown to Seller, its successors and assigns, at the following address or at such place as Seller may designate in writing, delivered or mailed to Purchaser: P.O. Box 536, Eustace, TX 75124

Purchaser has the right at any time to pay in advance all or any part of the unpaid balance hereunder and obtain a partial refund of the finance charge. The refund shall be the greater of a refund based on the "Sum of Digits" formula, or a refund such that the finance charge retained does not exceed the maximum allowed to be charged under any applicable state and/or federal laws.

Interest shall be charged on past due installments at Eighteen per cent (18%).

SECURITY INTEREST- Seller retains title to or liens on the land until all payments hereunder have been paid in full, and NO PART OF THE LAND WILL BE CLEARED OF SUCH SECURITY INTEREST PRIOR TO COMPLETION OF ALL PAYMENTS HEREUNDER.

Purchaser agrees to promptly reimburse Seller for ad valorem taxes for the current year on a pro-rata basic. Purchaser will be solely responsible for ad valorem taxes based on assessments after the date of this agreement. In the event Purchaser shall not make timely payment of taxes, Seller shall have the option (but no responsibility hereunder) to pay such taxes and be reimbursed within 15 days by Purchaser.

Cash Price $ 65,100.
Down payment 3700;
Unpaid balance of cash Price and amount financed 61,400.
Finance Charge 140,797.60
Total of payments $ 202,197.60
Annual percentage rate: 10.5
Deferred payment price $ 205,897.60

Total of payments is as follows:
Consecutive monthly payments until paid in full at $ 561.66/—
for 360 months, first payment due on 4-22-05

Upon the completion of said payments in full and payment by Purchaser of said property taxes, Seller will deliver, or cause to be delivered, to Purchaser, a General Warranty Deed to said property, free and clear of all liens except those caused by Purchaser. No oil, gas and/or other minerals or royalties therein shall be conveyed in said deed, and said conveyance shall be subject to mineral leases and outstanding interests of third parties in various minerals and substances, now and hereafter of record. Said property shall further be conveyed, and this agreement is subject to the restrictions on record in the office of the County Clerk of the county in which said land is located. STANDARD TITLE POLICY WILL BE FURNISHED, AT PURCHASER'S REQUEST AND EXPENSE. Purchaser is advised to either have the abstract covering the real estate which is the subject of this contract examined by and attorney of Purchaser's own selection, or be furnished with or obtain policy of title insurance, Seller's General Warranty Deed, and said standard title policy, shall also contain such exceptions and conditions are customarily inserted by reputable title policies in respect to lands in Texas. In the event of

EXHIBIT
3

prior sale of the above property, this agreement shall be null and void without further liability of Seller upon the refund to Purchaser of all payments made hereunder. Purchaser shall not have the right to cut any timber on the above described land without the prior written consent of Seller until the purchase price is paid in full.

Seller does not propose to install any water or sewer systems, or construct or maintain any roadways or driveways in any access area or strip of any lot. Accordingly, any extensions of water or sewer lines to the land or construction of any driveways or any access strip included in the above land, shall be responsibility of Purchaser.

Time is of the essence in the payment of monthly installments and all payments for herein and in the event of default in making any of the payments provided for herein, and such default continues for thirty (30) days, the agreement may, at the option of the Seller, its successors or assigns, (a) be cancelled after notice is mailed to Purchaser by Certified Mail, and this contract will be at an end and all rights of Purchaser hereunder will be forfeited and the money deposited herewith, as well as all payments made hereunder, may be retained by Seller, its successors or assigns, because of such default as liquidated damages and/or rent for the use and detention of the property, (b) this agreement shall mature and all amounts provided to be paid hereunder shall at once become due and payable, or (c) Seller may enforce any other legal or equitable right or remedy it may have on account of such default. Failure to exercise any option shall not constitute a waiver of the right to exercise same in the event default shall continue or again occur. No statements nor representations shall in anywise modify or affect this agreement unless same are in writing and signed by all of the parties hereto.

_____  
Rex Smith, Seller

_____  
Purchaser

65